[Cite as *Mullaji v. Mollagee*, 2023-Ohio-246.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

SAJID MULLAJI

    Appellee

    v.

WAHEEDA MOLLAGEE

    Appellant

C.A. No.    21CA011779

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    16DU080966

DECISION AND JOURNAL ENTRY

Dated: January 30, 2023

---

TEODOSIO, Presiding Judge.

{¶1}    Waheeda Mollagee appeals the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, denying her motion for relief from judgment. We affirm in part and reverse in part.

I.

{¶2}    The facts of this case have previously been set out in *Mullaji v. Mollagee*, 9th Dist. Lorain No. 19CA011593, 2020-Ohio-4618, ¶ 2-7:

Sajid Mullaji and Waheeda Mollagee married in a Muslim religious ceremony in South Africa in January 2012. After the marriage, Mr. Mullaji, who is a citizen of India, returned to the United States, where he was employed and resided on an H1-B visa. Ms. Mollagee, a citizen of South Africa, remained in her home country to complete medical training. She joined Mr. Mullaji in the United States in 2013 on an H-4 visa obtained as Mr. Mullaji's spouse. In the summer of 2013, Mr. Mullaji sought permanent resident status based on his employment, and Ms. Mollagee sought permanent resident status based on marriage. Their applications were approved in February 2014.

On February 20, 2014, a daughter, Z.M., was born to the couple. They jointly obtained a United States passport for Z.M. several months after her birth. In December 2014, Ms. Mollagee traveled with Z.M. to visit family in South Africa.

They returned to the United States in February 2015. During August 2015, Mr. Mullaji and Ms. Mollagee participated in marital counseling. Three months later, Ms. Mollagee traveled with Z.M. to South Africa for a second extended visit. Although Mr. Mullaji did not want them to make this trip, he purchased plane tickets and consented in writing to Z.M.'s entry into South Africa with one parent. Two days before their departure, the couple had an argument. The day before her departure for South Africa, Ms. Mollagee consulted an attorney, who told her that her marriage to Mr. Mullaji was not recognized in South Africa and, as a consequence, that Ohio law conferred no parental rights and responsibilities upon him. She also made a report to the police that alleged domestic violence as a result of the prior day's argument. Police took no further action on that report. While Ms. Mollagee was in South Africa, she requested Mr. Mullaji's consent to the registration of Z.M.'s birth with the South Africa government. Mr. Mullaji gave his consent. Shortly thereafter, Ms. Mollagee informed Mr. Mullaji that she was ending their marriage and that she and Z.M. would not be returning to the United States.

On February 9, 2016, Mr. Mullaji filed a complaint for legal separation in the Lorain County Court of Common Pleas. In the complaint, he requested sole parental rights and responsibilities with respect to Z.M. On March 7, 2016, Mr. Mullaji filed an application for the return of Z.M. from South Africa under the Hague Convention on the Civil Aspects of International Child Abduction ("The Hague Convention"). Shortly thereafter, Ms. Mollagee moved to dismiss the complaint for legal separation, arguing that the trial court did not have subject matter jurisdiction because the couple's religious marriage had not been solemnized in a civil ceremony. Consequently, Ms. Mollagee maintained, it was not a marriage as defined by the South African Marriage Act of 1961, and could not be recognized as such by an Ohio court. The trial court conducted a two-day hearing, during which each party presented expert testimony regarding the recognition of Muslim religious marriages in South Africa. In May 2016, Ms. Mollagee obtained a faskh, an annulment of the parties' marriage under Islamic law.

On November 19, 2016, the trial court denied the motion to dismiss. Ms. Mollagee attempted to appeal that order to this Court, but that appeal was dismissed for lack of a final appealable order. Ms. Mollagee moved the trial court to reconsider its decision, but the trial court declined to do so. Mr. Mullaji moved the trial court to adopt a shared parenting plan and, on January 1, 2018, he filed an amended complaint seeking divorce. The matter was set for trial beginning on November 5, 2018. In anticipation of trial, the parties reached an agreement regarding the division of their property, leaving only the issues of parental rights and responsibilities and spousal support to be determined.

On the same date that the trial commenced, the High Court of South Africa (Western Cape Division, Cape Town), rendered a decision on Mr. Mullaji's Hague Convention application. That decision ordered the return of Z.M. to the United States and set conditions for her return. In the event that Ms. Mollagee returned to the United States as well, those terms set forth a requirement that within one month,

the parties "institute proceedings and pursue them with due diligence" to obtain an order regarding housing and related expenses, child and spousal maintenance, educational and health expenses, and parenting time consistent with terms set by the South African court. The Order provided that if Ms. Mollagee gave notice of her intention to return to the United States with Z.M., "the order for the return of [Z.M.] shall be stayed until the appropriate court in the State of Ohio, USA, has made the order referred to * * * above[.]" It also, however, provided that the terms of support and parental rights were "[u]nless otherwise ordered by the appropriate court in Ohio." Ten months later, the South African Court issued a judgment setting forth its underlying legal conclusions regarding the status of the parties' marriage under South African law, which were not contained in the previous order. Both parties requested leave to appeal the Hague Convention orders while the divorce action proceeded in the trial court. It appears that those appeals are still pending.

On November 21, 2019, after a trial that extended for seven days over the course of almost six months, the trial court entered a divorce decree that incorporated the parties' stipulations regarding the division of property; determined that spousal support was not appropriate or reasonable; required Mr. Mullaji to pay child support; and adopted the parenting plan submitted by Mr. Mullaji, subject to several revisions that the trial court ordered sua sponte. Ms. Mollagee appealed the trial court's decision, asserting four assignments of error.

In September 2020, this Court overruled Ms. Mollagee's first assignment of error that argued the trial court erred by denying her motion to dismiss Mr. Mullaji's complaint under Civ.R. 12(B)(1), which argued that the trial court lacked subject matter jurisdiction on the basis that the couple's Muslim ceremonial rites marriage was not recognized as a valid marriage under South African law. *See Mullaji* at ¶ 11. In doing so, this Court did not consider the merits of Ms. Mollagee's arguments with respect to the validity of the marriage because we concluded that "[t]he issue of whether or not the parties' marriage was one recognized by law in South Africa is a question going to the particular facts of [the] case and, therefore, it does not implicate the subject matter jurisdiction of the trial court." *Id*. at ¶ 10. We sustained Ms. Mollagee's second assignment of error and remanded the matter to the trial court on the issue of the trial court's sua sponte revision of a proposed shared parenting plan. *Id*. at ¶ 12-17.

{¶3} On October 26, 2020—before the trial court had an opportunity to act on this Court's remand—the High Court of South Africa (Western Cape Div., Cape Town) issued a judgment on appeal as to Ms. Mollagee's retention of the minor child. In pertinent part, the South African court stated that marriages solemnized according to Muslim ceremonial rites were not recognized as valid marriages in South Africa. *W.M. and S.S.M.*, No. A356/19, ¶ 51 (Oct. 26, 2020), High Court of South Africa (Western Cape Div., Cape Town). The South African court further opined: "In my view, the court *a quo* erred in coming to the conclusion that the parties had concluded a valid marriage in terms of the South African law." *Id.* Consequently, the South African court found that Mr. Mullaji had failed to establish custody rights based upon the parties' marriage and concluded that Ms. Mollagee's retention of the minor child was not wrongful as contemplated by Article 3 of the Hague Convention. *Id.* at ¶ 57.

{¶4} On November 20, 2020, Ms. Mollagee subsequently petitioned the Lorain County trial court for relief from its November 21, 2019, judgment and decree of divorce on the basis of the South African appellate court's decision, arguing that relief should be granted under Civ.R. 60(B)(2), (4), or (5). On July 2, 2021, the trial court denied the motion. Ms. Mollagee now appeals, raising three assignments of error.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING WAHEEDA'S MOTION FOR RELIEF PURSUANT TO CIV.R. 60(B)(2).

ASSIGNMENT OF ERROR THREE

THE TRIAL COURT'S DECISION DENYING THE APPELLANT'S CIV.R. 60(B)(2) MOTION WAS AN ERROR AS A MATTER OF LAW.

**{¶5}** In her first and third assignments of error, Ms. Mollagee argues the trial court abused its discretion in denying her motion for relief from judgment pursuant to Civ.R. 60(B)(2). We do not agree.

**{¶6}** "The decision to grant or deny a motion to vacate pursuant to Civ.R. 60(B) lies in the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." (Internal quotations and citations omitted.) *Deutsche Bank Natl. Trust Co. v. Hughes*, 9th Dist. Summit No. 28454, 2018-Ohio-1041, ¶ 8. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶7}** Civ.R. 60(B) provides that relief from judgment may be granted upon a demonstration of:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

In order to prevail on a motion brought pursuant to Civ.R. 60(B), the moving party must demonstrate that:

> (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.

*GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976) paragraph two of the syllabus. "[A]ny claims for relief from judgment under Civ.R. 60(B)(1), (2), or (3) [are] untimely [where a movant fails] to file his Civ.R. 60(B) motion within one year of the judgment entered against him." *Fairbanks Capital Corp. v. Heirs at Law*, 9th Dist. Summit No. 22733, 2005-Ohio-6459, ¶ 9. "All three requirements are independent and in the conjunctive, so each must be clearly established to be entitled to relief." *Windward Ents., Inc. v. Valley City Dev. Group LLC*, 9th Dist. Medina No. 18CA0001-M, 2019-Ohio-3419, ¶ 29, citing *GTE Automatic Elec., Inc.* at 151.

{¶8}    A motion for relief from judgment based on newly discovered evidence must be made within one year of the judgment at issue. *State ex rel. DeWine v. Helms*, 9th Dist. Summit No. 26472, 2013-Ohio-359, ¶ 17, citing Civ.R. 60(B). The evidence upon which a movant relies in support of a motion under Civ.R. 60(B)(2) must be "actually 'newly discovered'" — or, in other words, in existence but discovered subsequent to trial despite the movant's due diligence. *Healey v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 25888, 2012-Ohio-2170, ¶ 15, quoting *Holden v. Ohio Bur. of Motor Vehicles*, 67 Ohio App.3d 531, 540 (9th Dist.1990). Such evidence must not be merely cumulative or impeaching but must be likely to produce a different outcome. *Id.*, quoting *Holden* at 540.

{¶9}    Legal determinations made after judgment was entered, however, are not "newly discovered evidence" that warrant relief under Civ.R. 60(B)(2). *See Thompson v. Summit Pain Specialists, Inc.*, 9th Dist. Summit Nos. 27635, 27638, 2016-Ohio-7030, ¶ 19-20. *See also Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, ¶ 109 (10th Dist.) ("Newly discovered evidence refers to evidence in existence at the time of trial of which the aggrieved party is excusably ignorant."). Ms. Mollagee's motion under Civ.R. 60(B)(2) rested upon the subsequent legal determinations of the South African Court, and, accordingly, the trial court did

not err by denying Ms. Mollagee's motion to the extent it alleged newly discovered evidence under Civ.R. 60(B)(2).

{¶10} Ms. Mollagee's first and third assignments of error are overruled.

ASSIGNMENT OF ERROR TWO

THE APPELLANT IS ENTITLED TO RELIEF PURSUANT TO CIV.R. 60(B)(4) AND (5) BECAUSE THE ORDER OF THE TRIAL COURT DATED 11/21/2019 IS NO LONGER EQUITABLE AND SHOULD NOT HAVE PROSPECTIVE APPLICATION AND BECAUSE SUCH ACTION IS APPROPRIATE TO ACCOMPLISH JUSTICE.

{¶11} Ms. Mollagee's second assignment of error argues that the trial court abused its discretion by denying her motion for relief from judgment under Civ.R. 60(B)(4) and Civ.R. 60(B)(5). This Court agrees in part.

{¶12} Under Civ.R. 60(B)(4), relief from judgment may be granted when "the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]" Civ.R. 60(B)(4) "was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control." *Knapp v. Knapp*, 24 Ohio St.3d 141 (1986), paragraph one of the syllabus. As this Court has explained,

> "The purpose of Civ.R. 60(B)(4) * * * is to relieve a litigant of the burdens of a judgment when changed circumstances have rendered its continued application inequitable." *Rock v. Inn at Medina Mgt. Co., Inc.*, 9th Dist. Medina No. 07CA0072-M, 2008-Ohio-1992, ¶ 6. "Relief under Civ.R. 60(B)(4) must be warranted by events occurring subsequent to the entry of the judgment in question. Events which occurred prior to judgment cannot be relied upon as grounds to vacate the judgment pursuant to Civ.R. 60(B)(4)." (Internal citation omitted.) *Youssefi v. Youssefi*, 81 Ohio App.3d 49, 52-53 (9th Dist.1991).

*Wells Fargo Bank, N.A. v. Clucas*, 9th Dist. Summit No. 27264, 2015-Ohio-88, ¶ 12. The subsequent legal decision of the South African Court arose from proceedings in which Ms.

Mollagee actively participated, and it addressed legal issues that she has also raised in the course of this litigation. Given these circumstances, the trial court did not abuse its discretion by denying relief from the judgment under Civ.R. 60(B)(4). *See generally Knapp* at paragraph one of the syllabus.

{¶13} Civ.R 60(B)(5) is a "catch-all provision" that "reflect[s] the inherent power of a court to relieve a person from the unjust operation of a judgment." *State ex rel. Gyurcsik v. Angelotta*, 50 Ohio St.2d 345, 346 (1977). Relief under Civ.R. 60(B)(5) is only available when necessitated by the interests of justice in "extraordinary and unusual cases." *Thornton v. Borstein*, 9th Dist. Summit No. 29669, 2021-Ohio-2231, ¶ 24. Ms. Mollagee maintains that she was entitled to relief under Civ.R. 60(B)(5) because once the South African Court determined the validity of the parties' Muslim-rite marriage on October 26, 2020, the trial court was obligated to accept that determination under the doctrine of *lex loci contractus*. *See generally Mazzolini v. Mazzolini*, 168 Ohio St. 357 (1958), paragraph one of the syllabus ("Generally, the validity of a marriage is determined by the lex loci contractus; if the marriage is valid where solemnized, it is valid elsewhere; if it is invalid there, it is invalid everywhere.").

{¶14} The trial court acknowledged the doctrine of *lexi loci contractus* but denied Ms. Mollagee's motion for relief from judgment based solely on the conclusion that "the South African Appellate Court's recent decision[] * * * essentially is * * * not controlling or dispositive upon the Court and its prior findings/determinations[]" and "any recent South African appellate decision does not alter the determination of the proceedings in Ohio." Although application of the doctrine of *lex loci contractus* is a general rule that admits of some exceptions, *see Mazzolini* at paragraph one of the syllabus, the trial court did not determine upon what basis it declined to apply that doctrine in view of the South African Court's specific determination that the parties' marriage was

invalid. This Court cannot consider that issue in the first instance. *See generally McCormick v. McCormick*, 9th Dist. Summit No. 30182, 2022-Ohio-3543, ¶ 10. Ms. Mollagee's second assignment of error is sustained solely on this basis. This Court makes no determination at this time whether relief is ultimately appropriate under Civ.R. 60(B)(5) or whether the doctrine of *lex loci contractus* controls.

### III.

{¶15} Ms. Mollagee's first and third assignments of error are overruled. Her second assignment of error is sustained to the extent set forth in this opinion. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and this matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

————————————————————
THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

{¶16} I respectfully dissent from the judgment of the majority as I would conclude that the trial court did not abuse its discretion in denying Ms. Mollagee's Civ.R. 60(B) motion.

{¶17} First, it is important to note that, previously, this Court remanded the matter to the trial court for limited, specified purposes. *See Mullaji v. Mollagee*, 9th Dist. Lorain No. 19CA011593, 2020-Ohio-4618, ¶ 17, 19. The validity of the marriage was not one of the issues which was left open for the trial court to reconsider. "The law of the case doctrine provides that upon remand, a trial court must apply the law as decided by the appellate court on the legal issues involved that have been decided with finality." *Williams v. Matthews*, 8th Dist. Cuyahoga No. 103501, 2016-Ohio-3461, ¶ 7. A trial court thus lacks the authority to take any action that would be inconsistent with the prior appeal or to disregard the mandate of the appellate court. *Smith v. Stacy*, 4th Dist. Pike No. 02CA701, 2003-Ohio-3467, ¶ 15. When a party disagrees with the result reached by an intermediate appellate court, the party's remedy is to appeal to the Supreme Court. *See Williams* at ¶ 9. If the Supreme Court declines review, the intermediate appellate decision is final. *Id.* Civ.R. 60(B) does not provide a route to circumvent that finality. *See id.*

{¶18} Moreover, Ms. Mollagee's arguments concerning the validity of the marriage are barred by res judicata. "Res judicata bars relitigation of a matter that was raised or could have

been raised on direct appeal when a final, appealable order was issued in accordance with the law at the time." *In re K.K.*, Slip Opinion No. 2022-Ohio-3888, ¶ 60, quoting *State v. Griffin*, 138 Ohio St.3d 108, 2013-Ohio-5481, ¶ 3. "The principle of res judicata holds that a final judgment on the merits is conclusive as to the rights of the parties; that is, once a matter is judicially decided, it is finally decided." *Smith* at ¶ 13. As Ms. Mollagee appealed a final appealable order, namely the divorce decree, she could have raised the issue of the validity of the marriage by assigning as error that the trial court wrongfully found that there was a valid marriage. However, she did not make that argument for whatever reason. *See generally Mullaji.* Once this Court affirmed portions of the trial court's judgment, which would include the finding that the marriage was valid, and the matter was not successfully appealed to the Supreme Court, the validity of the marriage was determined. Thus, upon remand, the trial court lacked the authority to conclude the marriage was invalid; therefore, it likewise did not abuse its discretion in denying Ms. Mollagee's Civ.R. 60(B) motion based upon the premise that the marriage was invalid.

{¶19} The trial court's decision itself evidences that it took the above-mentioned concepts into consideration in rendering its decision. It reasoned that,

> [i]n the present case, the South African Appellate Court's recent decision(s) (from October 26, 2020) essentially is/are not controlling or dispositive upon the Court and its prior findings/determinations. Moreover, as previously represented and/or determined, the parties' marriage is not "void" as defendant asserts. *See also[] Mazzolini v. Mazzolini*, 168 Ohio St. 357 (1958) (set[ting] forth Ohio's public policy regarding recognition for foreign marriages). In essence, any recent South African appellate decision does not alter the determination of the proceedings in Ohio.

(Emphasis added.)

{¶20} *Mazzolini* involved examining whether a marriage between first cousins was void ab initio and subject to annulment. *See id.* at paragraph three of the syllabus. The marriage at issue here, as noted by the trial court, was not void. *See Mullaji* at ¶ 10, fn. 2. And, as discussed

above, that issue is no longer open to challenge. Accordingly, I cannot say that *Mazzolini* is controlling or particularly relevant in the disposition of this matter. Thus, I see no basis to remand the matter to the trial court for it to further consider that case.

APPEARANCES:

GARY J. GOTTFRIED, Attorney at Law, for Appellant.

DOUGLAS M. BRILL, Attorney at Law, for Appellant.

JONATHAN A. RICH and CHRISTOPHER R. REYNOLDS, Attorneys at Law, for Appellee.